IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EUGENE ANDERSON,

    Plaintiff,

v.

THE BOARD OF REGENTS of the
UNIVERSITY SYSTEM OF GEORGIA,
BRUCE GRUBE, President of
Georgia Southern University,
RONALD CORE, former Vice-
President of Georgia Southern
University, and KEN BROWN,
Director of Public Safety at
Georgia Southern University, in
their individual and official
capacities,

    Defendants.

CIVIL ACTION NO.

1:04-CV-3135-JEC

## ORDER AND OPINION

This action is presently before the Court on defendants' Motion to Stay Discovery [43] and defendants' Partial Motion to Dismiss [44]. The Court has reviewed the record and the arguments of the parties and, for the following reasons, **GRANTS** defendants' Motion to Stay Discovery [43] and **GRANTS in part** and **DENIES in part** defendants' Motion to Dismiss [44].

## BACKGROUND

Plaintiff is a former safety engineering manager for Georgia Southern University ("GSU"). (Am. Compl. [42] at ¶ 1.) GSU

terminated plaintiff's employment in September, 2002. (*Id.* at ¶ 42.) Plaintiff subsequently filed suit against the Board of Regents ("BOR") of the University System of Georgia, and several GSU officials, in Fulton County Superior Court. (Compl. [1].) In his Complaint, plaintiff alleged that he was fired in retaliation for informing GSU officials and employees about various environmental health hazards at GSU. (*Id.* at ¶ 37.) He asserted state law claims under Georgia's whistle-blower statute and the Free Speech and Due Process Clauses of the Georgia Constitution. (*Id.* at ¶¶ 40-50, 58-64, 74-82.) He also asserted federal First Amendment and Due Process claims. (*Id.* at ¶¶ 51-57, 65-73.)

Defendants removed the case to federal court on October 26, 2004. (Notice of Removal [1].) Upon plaintiff's motion, and with defendants' consent, the Court remanded the state law claims to the Fulton County Superior Court. (Order [17].) The Court then stayed the federal proceedings pending the resolution of plaintiff's state law claims. (Order [30].) The Court indicated in its stay order that plaintiff could reactivate the federal litigation following the issuance of a final judgment in the Fulton County Superior Court. (*Id.*)

2

The Superior Court issued a final order concluding the state court litigation on July 9, 2008.[1] (Superior Court Order, attached to Pl.'s Status Report [40] at Ex. C.) Pursuant to the Court's stay order, plaintiff reactivated the federal proceedings and filed an Amended Complaint asserting federal Due Process and First Amendment claims. (Am. Compl. [42].) In the Amended Complaint, plaintiff alleges that he was terminated in retaliation for his speech in violation of the First Amendment, and that the circumstances surrounding his termination violated the Due Process Clause of the United States Constitution. (Id. at 12-16.)

Defendants have filed a partial motion to dismiss plaintiff's claims. (Defs.' Mot. to Dismiss [44].) In their motion, defendants contend that the BOR is not a proper defendant in this lawsuit, and that plaintiff's claims against the BOR are barred by the Eleventh Amendment. (Id. at 3-5.) Defendants further argue that plaintiff's claims against the individual defendants in their personal capacities are barred by qualified immunity. (Id. at 5-9.) Defendants' motion to dismiss, as well as their motion to stay discovery pending the Court's ruling on the qualified immunity issue, are presently before the Court.

---

[1] The Superior Court denied relief on plaintiff's state whistle-blower claim, and granted summary judgment to defendants on plaintiff's state constitutional claims. (Superior Court Orders, attached to Pl.'s Status Report [40] at Exs. B and C.)

3

**DISCUSSION**

I. **Defendants' Motion to Dismiss**

In deciding a motion to dismiss, the Court assumes that all of the allegations in the complaint are true, and construes all of the facts in favor of the plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009). That said, a complaint must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal, plaintiff's factual allegations must raise more than a speculative right to relief, and the complaint must include "either direct or inferential allegations respecting all material elements" of the asserted cause of action.[2] *Id.* at 555, 560-63.

A. **Plaintiff's Claims Against the BOR and the Individual Defendants in Their Official Capacities**

Plaintiff alleges that the BOR terminated his employment in violation of his federal rights to due process and free speech. (Pl.'s Amended Compl. [42] at 12-16.) The only vehicle for enforcing plaintiff's constitutional claims is § 1983. *See Porter v. White*,

---

[2] Plaintiff incorrectly relies on the "any set of facts" standard for a motion to dismiss announced by the Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court substantially altered that standard in *Twombly*, 550 U.S. at 560-63. *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1302 (11th Cir. 2007)(discussing *Twombly*).

4

483 F.3d 1294, 1307 (11th Cir. 2007)(noting that § 1983 "'creates a species of tort liability in favor of persons who are deprived of rights . . . secured to them by the Constitution'")(quoting *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 305-06 (1986)). Section 1983 creates a private right of action against "[e]very person who, under the color of [state law]," deprives a plaintiff of rights secured to them by the Constitution. *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004).

Defendants argue that the BOR is not a "person" subject to suit under § 1983. (Defs.' Br. [44] at 2-4.) Defendants are partially correct. The Supreme Court has held that "a State is not a 'person' against whom a § 1983 claim *for money damages* might be asserted." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia,* 535 U.S. 613, 617 (2002)(emphasis added). Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiff's claim for money damages against the BOR.

A suit for damages against a state official acting in his official capacity is in effect a suit against the state treasury. *Hobbs v. Roberts,* 999 F.2d 1526, 1528 (11th Cir. 1993). Consequently, the above ruling applies to plaintiff's claim for money damages against the individual defendants in their official capacities. *Id.* Defendants' motion to dismiss plaintiff's claims for monetary relief against the individual defendants in their official capacities is

5

thus also **GRANTED**.

Unlike the plaintiff in *Lapides,* plaintiff here asserts a claim against the BOR, as well as the individual defendants in their official capacities, for declaratory relief. (Am. Compl. [42] at 16.) See *Lapides*, 535 U.S. at 617 (noting that the complaint failed, implicitly or explicitly, to seek declaratory relief). As to the BOR, defendants suggest that plaintiff's claim for declaratory relief is barred by the Eleventh Amendment. (Defs.' Br. [44] at 3.) The Eleventh Amendment generally protects a state from being sued in federal court unless the state has waived, or Congress has validly abrogated, the state's immunity. *Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1301 (11th Cir. 2007). Congress has not abrogated the states' immunity from § 1983 suits.[3] *Williams,* 477 F.3d at 1301. However, there is some question in this case as to whether the BOR has waived its Eleventh Amendment immunity.

In a footnote to his response, plaintiff cites *Lapides* in

---

[3] The Court rejects plaintiff's argument that Congress has abrogated the BOR's immunity on his due process claims because those claims are based on a leave policy that "mirrors the [FMLA]." (Pl.'s Resp. [47] at 7-8.) Plaintiff cites case law noting Congress's intent to abrogate Eleventh Amendment immunity for FMLA claims. (*Id.* at 7.) Plaintiff reasons that his due process claims, because they arise from the BOR's violation of a leave policy that is "grounded in" the FMLA, are not subject to Eleventh Amendment immunity. (*Id.* at 8.) The Eleventh Circuit rejected a similar argument in *Williams*, 477 F.3d at 1301 (holding that plaintiff's § 1983 action, although it was based on Title IX, was still barred by the Eleventh Amendment).

6

support of his argument that the BOR waived its immunity by removing this case to federal court. (Pl.'s Resp. [47] at 8, n. 2.) In *Lapides*, the Supreme Court stated: "The question before us is whether the State's act of removing a lawsuit from state court to federal court waives [Eleventh Amendment] immunity. We hold that it does." *Lapides*, 535 U.S. at 616. Explaining its reasoning, the Court discussed numerous authorities for the proposition that a state's "voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity." *Id.* at 619-20. The Court concluded that:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.

*Id.* at 619.

Defendants point out that the *Lapides* Court expressly limited its holding to state law claims, in respect to which immunity had been expressly waived in state court proceedings. (Defs.' Reply [50] at 5.) However, defendants do not coherently explain why this distinction is important. Neither do they cite any case law, after *Lapides*, holding that removal does not constitute a waiver of Eleventh Amendment immunity in cases involving federal claims.

Although *Lapides* was necessarily limited to the facts that were

7

before the Supreme Court in that particular case, the principle underlying the decision would seem to apply here. Accordingly, the Court **DENIES** defendants' motion to dismiss plaintiff's claims against the BOR for declaratory relief. If defendants wish to pursue their Eleventh Amendment argument with respect to these claims, they may re-brief the waiver issue pursuant to the summary judgment briefing schedule discussed below. If defendants decide to re-brief the waiver issue, they should specifically discuss why the reasoning in *Lapides* is inapplicable to this case. Defendants should also cite any relevant case law addressing the question whether the removal of federal claims constitutes a waiver of Eleventh Amendment immunity under *Lapides.*

Defendants concede that, under the *Ex Parte Young* exception to Eleventh Amendment immunity, plaintiff may pursue his claims for declaratory relief against the individual defendants in their official capacities. *See Florida Ass'n of Rehab. Facilities, Inc., v. Florida Dep't of Health and Rehab. Serv.,* 225 F.3d 1208, 1219 (11th Cir. 2000)(applying *Young*). Thus, those claims remain pending.

### B. Plaintiff's Claims Against the Individual Defendants in Their Personal Capacities

Defendants contend that the individual defendants are protected from suit in their personal capacities by qualified immunity. (Defs.' Br. [44] at 5-9.) Qualified immunity confers complete

8

protection upon government officials sued in their personal capacities unless their conduct "'violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An official is entitled to qualified immunity if an objectively reasonable official in the same situation could have believed that his actions were lawful. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)).

To receive qualified immunity, a public official must first demonstrate that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Id.* Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity does not apply. *Id.* On a motion to dismiss, the plaintiff can meet that burden by alleging that: (1) the defendant committed a constitutional violation; and (2) the constitutional right the defendant violated was "clearly established" at the time of the violation. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

There is no question that defendants were acting within their discretionary authority when they terminated plaintiff's employment. To determine whether an official is acting within his discretionary

9

authority, the Court "look[s] to the general nature of the [official's] action, temporarily putting aside the fact that it may have been committed . . . in an unconstitutional manner." *Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). So viewed, an official acts within his discretionary authority when he "is engaged in a legitimate job-related function." *Id.* Plaintiff does not dispute that the individual defendants were performing a legitimate job function: namely disciplining a subordinate, when they terminated his employment.[4]

The question, then, is whether plaintiff can show that the individual defendants violated a clearly established constitutional right when they participated in the termination decision. Plaintiff alleges that defendants violated his right to free speech by terminating him in retaliation for his statements about environmental problems at GSU. (Am. Compl. [42] at 15-16.) He alleges that defendants violated his right to due process by terminating him in violation of GSU policy, and by failing to give him a meaningful

---

[4] The Court is not persuaded by plaintiff's argument that defendants' actions "would have been ministerial" had there been a valid basis for them. (Pl.'s Resp. [47] at 12.) If plaintiff assumes that defendants' actions had a valid basis, presumably there would be no complaint. In any case, the Eleventh Circuit has abandoned the "discretionary function/ministerial task" dichotomy, focusing instead on whether a defendant's actions "are of a type that fell within [his] job responsibilities." *Holloman*, 370 F.3d at 1265.

10

opportunity to challenge his termination. (*Id.* at 12-15.) The Court has questions about plaintiff's ultimate ability to overcome the qualified immunity defense on either his due process or his free speech claims. However, dismissal of either claim would be inappropriate at this stage in the litigation.

### 1. Plaintiff's First Amendment Claim

In their motion to dismiss, defendants argue that plaintiff's statements about GSU's environmental problems cannot support a First Amendment claim because the statements were made in accordance with plaintiff's job description as an Environmental Safety Manager. (Defs.' Br. [44] at 7.) The Court is aware of fairly recent Supreme Court authority holding that statements made by a plaintiff in the course of performing his job duties are not constitutionally protected. *See Garcetti v. Ceballos,* 547 U.S. 410 (2006) and *Boyce v. Andrew,* 510 F.3d 1333, 1342 (11th Cir. 2007)(applying *Garcetti*). However, defendants do not even bother to cite *Garcetti*, much less discuss its application to this case. They simply make their cursory argument and apparently expect the Court to do their legal research for them.

Moreover, it is not apparent from the pleadings that plaintiff's statements were made within the course of performing his job duties. Plaintiff alleges in the complaint that he was responsible for: (1) addressing safety concerns related to hazardous materials; (2)

11

reviewing inspection reports, complaints, and recommendations, and ensuring that corrective action took place; and (3) developing, maintaining, and reviewing compliance with Employee Right-to-Know laws concerning exposure to hazardous materials. (Am. Compl. [42] at 4.) None of those job functions necessarily encompasses a duty to inform the GSU community or the general public about environmental hazards.

In order to determine whether plaintiff's First Amendment claim is barred by *Garcetti*, the Court needs more information concerning both plaintiff's job duties and the content and context of his statements. There is no evidence before the Court on either topic and, even if there were, it would be inappropriate to consider that evidence on a motion to dismiss. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003)("'Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion.'")(quoting *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002)). In short, the allegations in plaintiff's complaint are sufficient to withstand the individual defendants' motion to dismiss on the basis of qualified immunity. Accordingly, the individual defendants' motion to dismiss plaintiff's claims against them in their personal capacities is **DENIED**.

Nevertheless, the Court agrees with defendants that it is

12

preferable to address the qualified immunity defense as early as possible. *See Koch v. Rugg*, 221 F.3d 1283, 1294 (11th Cir. 2000)(noting that the qualified immunity defense protects a defendant not only from trial, but from the other burdens of litigation). The Court will therefore permit the individual defendants to file a motion for summary judgment on their qualified immunity defense to plaintiff's First Amendment claim, using the discovery conducted in the state court proceedings. Defendants should file their motion for summary judgment by **Monday, March 15, 2010**. In the brief supporting the motion, defendants should cite and thoroughly discuss *Garcetti* and any other relevant authorities. Plaintiff should file his response, and defendants their reply, within the time limits provided for in the local rules.

### 2. Plaintiff's Due Process Claim

Defendants' qualified immunity defense to plaintiff's due process claim is also more appropriately resolved on a motion for summary judgment. As an initial matter, defendants rely too heavily in their motion to dismiss on conclusory statements that are unsupported by any allegations in the complaint or by any evidence that is properly before the Court. For example, defendants argue that their decisions concerning plaintiff's termination complied with due process because they were made in accordance with BOR policy and practice. (Defs.' Br. [44] at 8.) In support of this argument,

13

defendants mention the testimony of the Director of Human Resources, Jack Heidler. (Id. at 9.) Even if defendants had cited Heidler's testimony in a way that would allow the Court to access it, which they did not, it would be inappropriate for the Court to consider the testimony on a motion to dismiss.[5]

As with plaintiff's First Amendment claim, defendants also fail to support their qualified immunity defense to plaintiff's due process claim with an adequate discussion of applicable case law. In their reply brief, defendants state that: "it is not a clearly established violation of [the] law for a supervisor to ignore [an] employee's preferences as to how to apply his leave balance and to run his paid leave concurrently with his unpaid leave." (Defs.' Reply [50] at 9.) That may be an accurate statement of the law, but without a citation to some authority, it is not at all helpful to the Court.

Based on the foregoing discussion, the Court **DENIES** defendants' motion to dismiss plaintiff's due process claims filed against the individual defendants in their personal capacities. The Court will permit defendants to submit a motion for summary judgment asserting

---

[5] Defendants also contend that plaintiff did not have a property interest in his job because GSU's policy does not require a finding of cause prior to termination of an unclassified, non-faculty employee. (Defs.' Reply [50] at 9.) However, there are no materials in the record, concerning either GSU's termination policy or the classification of plaintiff's position, to verify that contention.

14

their qualified immunity defense to these claims, based on the discovery conducted in the state court proceeding. The supporting brief should cite and thoroughly discuss all relevant authorities. Defendants should file this motion in conjunction with their motion for summary judgment on plaintiff's First Amendment claims by **Monday, March 15, 2010**. Plaintiff should file a response, and defendants file a reply, in accordance with the time limits provided for in the local rules.

## II. Defendants' Motion to Stay Discovery

Defendants have filed a motion to stay discovery pending the resolution of the qualified immunity issue. (Defs.' Mot. to Stay Discovery [43].) The Court agrees with defendants that engaging in full discovery prior to resolving the qualified immunity issue would be unduly burdensome for defendants. *See Koch,* 221 F.3d at 1294. Moreover, the qualified immunity issue can be resolved without extensive discovery. The Court simply needs some evidence concerning: (1) plaintiff's job duties; (2) the content and context of the statements that underlie plaintiff's First Amendment claim; (3) the BOR's leave and termination policies; and (4) the process that plaintiff was provided in conjunction with his termination.

The Court suspects that sufficient evidence on these topics is already available to the parties as a result of the discovery conducted in the state court litigation. The Court thus **GRANTS**

15

defendants' motion to stay discovery pending the resolution of the qualified immunity issue on summary judgment. If either party believes that additional, limited discovery is needed to resolve the qualified immunity issue, that party should file a motion describing the discovery it wants to conduct and explaining how the discovery is directly related to the qualified immunity issue. If the Court allows more discovery, it will extend the date for filing the motion for summary judgment.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendants' Motion to Stay Discovery [43] and **GRANTS in part** and **DENIES in part** defendants' Motion to Dismiss [44]. Defendants are directed to file a motion for summary judgment on the qualified immunity issue by **Monday, March 15, 2010**. In the brief supporting their motion, defendants should thoroughly discuss the issues identified above. In conjunction with their summary judgment brief, defendants may also re-brief the Eleventh Amendment waiver issue. Plaintiff should file a response, and defendants a reply, in accordance with the time limits provided for in the local rules.

SO ORDERED, this 2 day of February, 2010.

_____
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

16