IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EUGENE ANDERSON,

        Plaintiff,

v.

THE BOARD OF REGENTS of the
UNIVERSITY SYSTEM OF GEORGIA,
BRUCE GRUBE, President of
Georgia Southern University,
RONALD CORE, former Vice-
President of Georgia Southern
University, and KEN BROWN,
Director of Public Safety at
Georgia Southern University, in
their individual and official
capacities,

        Defendants.

CIVIL ACTION NO.

1:04-CV-3135-JEC

## ORDER AND OPINION

This action is presently before the Court on defendants' Motion for Partial Summary Judgment [58] and plaintiff's Motion for a Status Conference [72]. The Court has reviewed the record and the arguments of the parties and, for the following reasons, **GRANTS** defendants' Motion for Partial Summary Judgment [58] and **DENIES as moot** plaintiff's Motion for a Status Conference [72].

## BACKGROUND

Plaintiff is a former safety engineering manager for Georgia Southern University ("GSU"). (Am. Compl. [42] at ¶ 1.) GSU

terminated plaintiff's employment in September, 2002. (*Id.* at ¶ 42.) Plaintiff alleges that he was fired in retaliation for statements he made concerning various environmental health hazards at GSU. (Compl. [1] at ¶ 37.)

Following his termination, plaintiff filed suit in Fulton County Superior Court against the Board of Regents ("BOR") of the University System of Georgia and several GSU officials. (*Id.*) In his complaint, plaintiff asserted state-law claims under Georgia's whistle-blower statute and under the Free Speech and Due Process Clauses of the Georgia Constitution. (*Id.* at ¶¶ 40-50, 58-64, 74-82.) He also asserted federal First Amendment and Due Process claims pursuant to 28 U.S.C. § 1983. (*Id.* at ¶¶ 51-57, 65-73.)

Defendants removed the case to federal court on October 26, 2004. (Notice of Removal [1].) Upon plaintiff's motion, and with defendants' consent, the Court remanded the state-law claims to the Fulton County Superior Court, and stayed the federal proceedings pending the resolution of those claims. (Order [17] and [30].) The Court indicated in its stay order that plaintiff could reactivate the federal litigation following the issuance of a final judgment in the Fulton County Superior Court. (*Id.*)

The Superior Court issued a final order concluding the state court litigation on July 9, 2008.[1]  (Superior Court Order, attached to Pl.'s Status Report [40] at Ex. C.)  Plaintiff subsequently reactivated the federal proceedings and filed an Amended Complaint asserting federal Due Process and First Amendment claims under §1983.  (Am. Compl. [42].)  In the Amended Complaint, plaintiff alleged that he was terminated in retaliation for his speech in violation of the First Amendment and that the circumstances surrounding his termination also violated the Due Process Clause of the United States Constitution.  (*Id*. at 12-16.)

Defendants moved to dismiss plaintiff's claims against the BOR and the individual defendants for failure to state a viable claim. (Defs.' Mot. to Dismiss [44].)  In support of their motion, defendants argued that plaintiff's claims against the BOR were barred by the Eleventh Amendment and that the individual defendants were entitled to qualified immunity.  (*Id*. at 3-9.)  The Court agreed that  plaintiff could not recover money damages against the BOR.[2]  (Order [55] at 5.)  It required further briefing, however,

_____

[1]  The Superior Court denied relief on plaintiff's state whistle-blower claim, and granted summary judgment to defendants on plaintiff's state constitutional claims.  (Superior Court Orders, attached to Pl.'s Status Report [40] at Exs. B and C.)  Thus, plaintiff lost on all of his state-law claims.

[2]  This ruling also applied to plaintiff's claim for money damages against the individual defendants in their official

as to BOR's immunity for declaratory relief and as to the individual defendants' claim of qualified immunity.  (*Id.* at 6-8 and 12-15.)

Pursuant to the Court's directive, defendants have filed a motion for partial summary judgment on plaintiff's claim for declaratory relief against the BOR, as well as his claim for monetary damages against the individual defendants in their personal capacities.  (Defs.' Mot. for Summ. J. [58].)   In addition, plaintiff has filed a motion for a status conference to discuss various scheduling and discovery issues.  (Pl.'s Mot. for Status Conference [72].)  Both of those motions are before the Court.

**DISCUSSION**

**I.**   **INDIVIDUAL DEFENDANTS**

**A.**   **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c).  A fact's materiality is determined by the controlling substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine when the evidence is such that a

---

capacities, which is "in effect a suit against the state treasury." (Order [55] at 5-6.)

reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.   Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be "'no genuine issue as to any material fact,'" as "a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (quoting Fᴇᴅ. R. Cɪᴠ. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323.   However, the movant is not required to negate his opponent's claim.   The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non[-]moving party's case." *Id.* at 325.   After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'"

5

*Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

### B. Qualified Immunity Standard

As noted, presently pending are plaintiff's §1983 claims against individual defendants, in their personal capacities. Plaintiff seeks monetary damages from the individual defendants, who contend that they are protected from suit in their personal capacities by qualified immunity. (Defs.' Br. [58] at 10-25.) Qualified immunity confers complete protection upon government officials sued in their personal capacities unless their conduct "'violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). An official is entitled to qualified immunity if an objectively reasonable official in the same situation could have believed that his actions were lawful. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)). *See also Boyce v. Andrew,* 510 F.3d 1333, 1341 (11th Cir. 2007)(defining the

6

relevant question as whether a reasonable official would have known that his conduct was "clearly unlawful in the situation confronted").

To receive qualified immunity, a public official must first demonstrate that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Bryant v. Jones,* 575 F.3d 1281, 1295 (11th Cir. 2009). Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity does not apply. *Id.* The plaintiff can meet that burden by presenting evidence that: (1) the defendant committed a constitutional violation and (2) the constitutional right the defendant violated was "clearly established" at the time of the violation. *Crosby v. Monroe Cnty.,* 394 F.3d 1328, 1332 (11th Cir. 2004).

In its previous order, the Court found that defendants were acting in their discretionary authority when they terminated plaintiff's employment. (Order [55] at 9-10.) Plaintiff does not dispute that finding. (Pl.'s Resp. [66] at 9-22.) Thus, to avoid summary judgment, plaintiff must present some evidence that his termination violated a "clearly established" right. (*Id.*) To that end, plaintiff argues that defendants violated his right to free speech by terminating him in retaliation for his statements about

7

environmental problems at GSU.  (Am. Compl. [42] at ¶¶ 15-16.)  He contends, further, that defendants violated his right to due process by terminating him in violation of the FMLA and by failing to give him a meaningful opportunity to challenge his termination.  (*Id*. at ¶¶ 12-15.)

C.   **Plaintiff's Free Speech Claim**

To determine whether an employee has suffered unlawful retaliation for exercising his right to free speech, the Eleventh Circuit has developed a four-part test, which was recently modified following the Supreme Court's decision in *Garcetti v. Ceballos,* 547 U.S. 410 (2006).  *Boyce,* 510 F.3d at 1342.  First, to qualify as constitutionally protected speech under the First Amendment, the speech must be made by a government employee speaking as a citizen and must address a subject of public concern.  *Id.*  Thus, the Court must initially determine: (1) whether the plaintiff spoke as an employee or as a citizen and (2) whether the speech related to a matter of public concern.  *Id.*

If the Court concludes that the speech is constitutionally protected, it must then weigh the plaintiff's First Amendment interests against the interest of the state in "regulating its workplace and efficiently providing services."  *Mitchell v. Hillsborough Cnty.,* 468 F.3d 1276, 1282 (11th Cir. 2006).  This balancing test has become known as the *Pickering* balancing test,

8

derived from the Supreme Court's decision in *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968). Assuming that the plaintiff prevails in the *Pickering* balance, one must then determine whether plaintiff's speech was a substantial motivating factor in the defendant's employment decision. *Rice-Lamar v. City of Ft. Lauderdale,* 232 F.3d 836, 841 (11th Cir. 2000). If so, then the last question is whether the defendant likely would have reached the same decision in the absence of the protected conduct. *Id.*

Defendants argue that plaintiff cannot meet the first part of the above test, because all of plaintiff's speech occurred in the course of performing his job duties. In *Garcetti,* the Supreme Court held that:

> when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.

*Garcetti*, 527 U.S. at 421.[3] Applying *Garcetti*, plaintiff's speech is not protected by the First Amendment if it was made in the course

---

[3] The plaintiff in *Garcetti* was a deputy district attorney for the Los Angeles County District Attorney's Office who claimed that his supervisors in the DA's Office retaliated against him after he drafted a memo discussing misrepresentations in an affidavit used to obtain a search warrant. The Ninth Circuit had held that the memo constituted protected speech because it addressed governmental misconduct, which is "inherently a matter of public concern." *Ceballos v. Garcetti,* 361 F.3d 1168, 1173-74 (9th Cir. 2004).

of fulfilling his job duties as an environmental safety manager for GSU, even if the speech relates to a topic of public concern. *Id.*

Plaintiff contends that he was fired because: (1) he repeatedly spoke to the BOR's Director of Compliance and Administration regarding GSU's failure to comply with environmental laws and (2) he encouraged GSU employees to file complaints about environmental issues under Right-to-Know laws. (Pl.'s Resp. [66] at 15-16.) Defendants have produced substantial evidence that all of these communications were made pursuant to plaintiff's job duties at GSU. (Pl.'s Dep. [65] at 72-74, 88-89, 231-32 and Pl.'s Job Description, attached to Pl.'s Resp. [66] at Ex. 1.) As an environmental safety manager, plaintiff was responsible for ensuring GSU's compliance with environmental rules and regulations. (Job Description [66] at 2.) Plaintiff admitted during his deposition that his statements to the BOR concerning environmental issues were made in the course of fulfilling that responsibility. (Pl.'s Dep. [65] at 29-30, 135-36.) Moreover, plaintiff's official job description required him to educate GSU employees about Right-to-Know laws. (Job Description at 3.)

Plaintiff does not present any evidence to dispute the above facts. (Pl.'s Resp. [66].) Nor does he convincingly distinguish *Garcetti*, or cite any other case law that would have put defendants on notice that plaintiff's communications were protected by the

10

First Amendment.[4]  Indeed, relying on *Garcetti*, the Eleventh Circuit

has consistently rejected free speech claims under circumstances

that are similar to the facts presented here.  *See Abdur-Rahman v.*

*Walker*, 567 F.3d 1278, 1282-86 (11th Cir. 2009); *Boyce,* 510 F.3d at

1344-45; and *Battle v. Bd. of Regents for Georgia,* 468 F.3d 755,

761-62 (11th Cir. 2006).  Accordingly, the individual defendants are

entitled to qualified immunity on plaintiff's free speech claim.

Their motion for summary judgment on this claim is therefore

**GRANTED**.[5]

---

[4]  In his response, plaintiff relies heavily on case law that precedes *Garcetti*, and does not account for the changes in First Amendment analysis that resulted from *Garcetti*.  *Compare Akins v. Fulton Cnty.,* 420 F.3d 1293, 1304 (11th Cir. 2005) and *Akins v. Fulton Cnty. ("Akins II")*, 278 Fed. Appx. 964, 970 (11th Cir. 2008).

[5]  Defendants have noted that a grant of partial summary judgment on the "preliminary issues" raised in defendants' motion does "not preclude the need to file a subsequent dispositive motion with respect to the remaining elements of Plaintiff's claims on behalf of the existing defendants."  (Defs.' Reply [69] at 3 n.1.)

The Court is unclear, however, why the summary judgment issued today in favor of the individual defendants does not end the litigation as to them and end the litigation for all defendants as to the First Amendment claim.  Resolution of the *Garcetti* issue presumably resolved the plaintiff's First Amendment claim on the merits, not just on qualified immunity grounds.  *See Akins II*, 278 Fed. Appx. at 970.  To the extent that defendants are indicating that they had other persuasive arguments on which to receive summary judgment on all elements of the *Pickering* test, it would have been a sounder litigation strategy had they presented all those arguments at one time in one summary judgment motion.  The *Garcetti* principle does not give rise to a precise test that will always yield uniform answers.  With their piecemeal approach to the First Amendment claim, the defendants may now be litigating an appeal in the

11

D.   **Plaintiff's Due Process Claim**

The Fourteenth Amendment prohibits the deprivation of liberty or property without procedural due process. *Warren v. Crawford,* 927 F.2d 559, 562 (11th Cir. 1991). To prevail on his claim that defendants violated his Fourteenth Amendment right to due process, plaintiff must prove: (1) that he was deprived of a constitutionally protected property or liberty interest and (2) that he received constitutionally inadequate process. *Arrington v. Helms,* 438 F.3d 1336, 1347-48 (11th Cir. 2006). In addition, in order to avoid summary judgment on qualified immunity grounds, plaintiff must show that the property or liberty interest was well established and that the process he received was clearly inadequate. *Crosby,* 394 F.3d at 1332.

1.   Constitutionally Protected Interest

Plaintiff contends that he had a protected property interest in his continued employment with GSU at the time of his termination. (Pl.'s Resp. [66] at 17.) State law determines whether a public employee has a property interest in his job. *Warren,* 927 F.2d at 562. Under Georgia law, public employees generally do not have a property interest in their continued employment. *Id.* However, a property interest may arise where "rules or mutually explicit

_____

Eleventh Circuit without all available arrows in their quiver.

understandings" create a legitimate "claim of entitlement" to continued employment. *Id.  See also Jimenez v. Wellstar Health Sys.,* 596 F.3d 1304, 1310 (11th Cir. 2010)(noting that property interests in employment benefits are established by rules or policies that "support claims of entitlement" to those benefits). For example, a public employee who by state statute or personnel policy can only be fired for cause has a protected property interest in his continued employment. *Id.*

Plaintiff does not cite any Georgia statute or regulation that would support a legitimate claim of entitlement to his continued employment. At the time of plaintiff's termination, the applicable statute expressly excluded from the state merit system "all officers, officials, and employees of the University System of Georgia, except those officers, officials, and employees already eligible to be covered by the state merit system by law or executive order." O.C.G.A. § 45-20-2(15)(I)(West 2002).  Plaintiff does not point to any "law or executive order" exempting his position from this exclusion.[6]

---

[6] Plaintiff argues that the exclusion is limited to employees hired after June 30, 1996, and therefore does not apply to him. (Pl.'s Resp. [66] at 19.)  However, the version of the statute that was effective when plaintiff was hired contains a similar exclusion. O.C.G.A. § 45-20-2(15)(I)(West 1995).

Likewise, plaintiff fails to cite any GSU or University System personnel policy that could have given rise to a protected property interest.  In fact, the GSU Employee Handbook in place at the time of plaintiff's termination expressly states that GSU personnel are "'at- will' employees." (Employee Handbook at 1, attached to Defs.' Mot. for Summ. J. [58] at Ex. 34.)  Although the Handbook provides examples of conduct that could lead to an employee's dismissal, it expressly reserves GSU's "right to immediately terminate the employment of any employee if, in the sole discretion of the University administration, the circumstances warrant." (*Id*. at 19, 22.)  The Eleventh Circuit has held that there is no property interest in continued employment when a state employer has such broad discretion to terminate an employee. *Warren,* 927 F.2d at 563.

Based on the applicable statutes and personnel policies, the Court concludes that plaintiff did not have a protected property interest in his continued employment at the time of his termination. Accordingly, plaintiff's termination does not support a due process claim against the individual defendants.  Defendants' motion for summary judgment on plaintiff's due process claim is therefore **GRANTED**.

2. <u>Adequate Process</u>

Even assuming that plaintiff could show a protected property interest, the process that plaintiff received before and after his

14

termination was not clearly inadequate.  Plaintiff contends that defendants violated his due process rights by placing him on family medical leave without his request and prior to the expiration of his accrued sick leave. (Pl.'s Resp. [66] at 20-21.)  Plaintiff argues, further, that defendants failed to give him a meaningful opportunity to challenge his termination.  (*Id*. at 21-23.)  The first argument is contrary to the law, and the second argument finds no support in the record.

The Family Medical Leave Act (the "FMLA") expressly allows employers to substitute any period of accrued leave for leave provided under the Act.  29 U.S.C. § 2612(d)(2).  *See also McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1307-08 (11th Cir. 1999)(noting that the FMLA permits an employer to concurrently run FMLA mandated leave with other accrued leave).  The GSU Employee Handbook clarifies that family leave, whether it is paid or unpaid, is limited to 12 weeks in any 12 month period. (Employee Handbook [58] at 16.)  Given GSU's leave policy and the terms of the FMLA, there is no basis for plaintiff's argument that he was entitled to use his accrued sick leave before defendants placed him on family medical leave.

As to the procedures that accompanied plaintiff's termination, the evidence in the record suggests that defendants complied with due process.  The essential requirements of due process are "notice

and an opportunity to respond." *Nicholson v. Gant,* 816 F.2d 591, 598 (11th Cir. 1987).   These requirements are met when a public employee receives "written notice of the reasons for termination and an effective opportunity to rebut those reasons prior to termination." *Id.   See also Epps v. Watson,* 492 F.3d 1240, 1247 (11th Cir. 2007)(noting that a public employee with a property interest in continued employment is entitled, prior to termination, to "'oral or written notice of the charges against him, an explanation of the employer's evidence and an opportunity to present his side of the story'")(quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985)).

Defendants notified plaintiff by letter on September 5, 2002 that his paid leave had expired and his FMLA leave would expire on September 24, 2002.  (September 5 Letter, attached to Defs.' Mot. for Summ. J. [58] at Ex. 30.)  The September 5, 2002 letter clearly explained to plaintiff that he was expected to return to work on or before September 25, 2002.  (*Id.*)  The notice urged plaintiff to contact his supervisor to advise him of plaintiff's ability and intention to return to work at that time.  (*Id.*)  Plaintiff's only response was a letter to human resources stating that he was "still disabled" and that his "condition will be reevaluated on September 24, 2002."  (September 16 Letter, attached to Defs.' Mot. for Summ. J. [58] at Ex. 31.)

16

Plaintiff received a second notice on September 27, 2002, informing him of his termination and providing a detailed explanation of the grounds for that decision. (September 27 Letter, attached to Defs.' Mot. for Summ. J. [58] at Ex. 33.) The September 27 letter explained that plaintiff had been expected to return to work on September 25, 2002, or at the very least advise his supervisor of any reasons preventing him from reporting to work. (*Id.*) The letter noted that plaintiff had, at that point, been absent from work for three consecutive days without explanation or even an attempt to contact his supervisor, and that plaintiff's continued absence jeopardized the effectiveness of GSU's environmental safety department. (*Id.*) The letter advised plaintiff that he was being terminated pursuant to the GSU policy that considered absence from work for three consecutive days without notice to constitute a resignation. (*Id.*)

Following his termination, plaintiff had an opportunity to appeal the decision by filing a grievance with the Board of Review. (Grievance, attached to Defs.' Mot. for Summ. J. [58] at Ex. 35.) Plaintiff filed a grievance on October 25, 2002. (*Id.*) The Board convened on December 10, 2002 to hear plaintiff's complaint. (Board Decision, attached to Pl.'s Resp. [66] at Ex. 49.) Based on plaintiff's documentary evidence and hearing testimony, the Board unanimously affirmed the decision to terminate plaintiff's

17

employment for failure to report to work. (*Id.*)  In its written decision, the Board informed plaintiff of his right to appeal the decision to the BOR. (*Id.*)  Plaintiff filed an appeal, which was presented to the BOR's Organization and Law Committee during its March 11, 2003 meeting. (BOR Decision, attached to Def.'s Mot. for Summ. J. [58] at Ex. 36.)  Again, the decision was affirmed. (*Id.*)

The above evidence indicates that defendants complied with all applicable laws and GSU policies in terminating plaintiff.  Prior to his termination, defendants provided plaintiff notice of, and an opportunity to challenge, his leave status.  At the time of his termination, defendants provided plaintiff with a detailed explanation of the grounds for the decision.  Plaintiff subsequently took advantage of multiple levels of appeal.  Plaintiff does not cite any authority to support his argument that the process he received was inadequate.  For this additional reason, the individual defendants are entitled to qualified immunity on plaintiff's due process claim.  Their motion on this claim is therefore **GRANTED**.

## II. CLAIMS AGAINST THE BOARD OF REGENTS

### A. Background

As to the status of any remaining claims against the Board of Regents ("BOR"), the parties seem to be talking across each other, and the Court is unclear as to exactly what their disagreement is or, more particularly, how that disagreement has any practical

18

impact on this case, going forward.  A recap might help to explain the Court's confusion.

Having sued the BOR, the plaintiff has effectively sued the State of Georgia.  Plaintiff has also sued individuals employed by the State whom he alleges to have acted wrongfully, and he has sued these individuals in both their individual capacities and their official capacities.  Thus, there are three types of defendants in this case:  the State (BOR), state officials, and these same officials in their individual capacities.

Plaintiff has sued all these defendants under § 1983 for alleged constitutional violations. He seeks two kinds of relief against these defendants: monetary damages and prospective equitable relief: that is, injunctive and/or declaratory relief directing the defendants to stop their continuing violations of federal law.

In its previous Order concerning defendants' original motion to dismiss, the Court ruled that the plaintiff cannot sue the BOR for monetary damages because the BOR is not a person, within the meaning of § 1983.  (Order and Opinion [55] at 5.)  In addition, because a state official is the equivalent of the state, itself, for purposes of monetary damages--that is, the money to pay any damages would come from the state treasury--this ruling also meant that the defendant state officials, in their official capacities, could likewise not be assessed any monetary damages.  *(Id.* at 5-6.)

19

This conclusion meant that the only defendants left who could possibly be ordered to pay the plaintiff any money are the above state officials, but only to the extent they were sued in their individual capacities.   If plaintiff were awarded any damages against these individuals, the latter, in theory, would be required to come up with the money out of their own pockets.

These individual defendants had argued, however, that they enjoyed qualified immunity from any award of damages.  As noted, the Court, in its previous Order, directed the defendants to provide more specific briefing on that point.  The Court has now, in this Order, indicated its agreement with the individual defendants' position and granted them qualified immunity.   Accordingly, plaintiff will be receiving no monetary damages in this case from anyone, and the individual defendants will presumably be dismissed.[7]

The only possible relief left for the plaintiff then is his request for prospective relief: that is, an injunction or declaration from this Court directing the defendants (BOR and/or official capacity defendants) to stop any ongoing violations of federal law.  *See Summit Med. Assoc., P.C. V. Pryor,* 180 F.3d 1326, 1336 (11th Cir. 1999).   While the BOR and official capacity defendants have argued from the outset that they enjoy Eleventh

---

[7]  See n.5 at 11, *supra*.

20

Amendment immunity as to monetary damages, defendants have also conceded from the outset that the *Ex Parte Young* exception to the above immunity allows plaintiff to pursue his claim for declaratory relief against the individual defendants in their official capacity.

In other words, should plaintiff prevail in his quest for declaratory relief, it would be these state officials, or their successors, who would be ordered to take, or forego, the directed action. The Court acknowledged this concession in its previous Order, and the official capacity defendants stand at the ready should plaintiff succeed on his request for declaratory relief.

That leaves only the BOR unaccounted for in any ruling regarding prospective relief, and the Court is unclear as to what the dispute actually is. In its last Order, the Court directed the parties to rebrief their continuing dispute as to whether the BOR continues to enjoy Eleventh Amendment immunity as to prospective relief. (*Id.* at 6-8.) They have done so, sort of, but, the Court remains unclear on why the disagreement matters.

Specifically, if the plaintiff prevails in his request for declaratory relief, the official capacity defendants will be directed to cease whatever unlawful actions the plaintiff demonstrates them to be taking. Such prospective relief can be granted, even in the face of a valid claim of sovereign immunity, because of the "legal fiction" created by *Ex parte Young*. *Summit*

21

*Med. Assoc., P.C.*, 180 F.3d at 1336-37.  That is, this legal fiction "creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority and, hence, without immunity protection, when they enforce state laws in derogation of the Constitution." *Id.*  With this linguistic justification, federal jurisprudence can play lip service to the notion that the state's sovereign immunity is being honored--because the State is not literally being told to do anything by a federal court--while, at the same time, skirting what would otherwise be the State's valid assertion of immunity from federal intervention by making the State's employees act in accordance with federal dictates.

To the extent that the plaintiff is arguing that both the official capacity defendants <u>and</u> the BOR should be directed to cease their ongoing unlawful conduct, the Court is unfamiliar with any case law that has held that both the State and its officials should be enjoined from future conduct.  And why would there be such a case? After all, the only reason federal courts needed to create a legal fiction in the first place was because the State enjoyed immunity from the litigation seeking to undo the alleged misconduct.  On a practical level, why should the plaintiff care whether the BOR is enjoined in any order directing that prospective relief, so long as the appropriate state officials are so directed?

22

Conversely, while the Court understands that the State/BOR, as a matter of principle, would want to maintain the legal fiction that the State is not being ordered, in violation of its sovereign immunity, to take any particular action, the result will be no different, as a practical matter, whether the recipients of the court's injunction are both the BOR and its officials, or the latter, alone.

Further, given the Court's ruling on the individual defendants' motion for qualified immunity, there is an even bigger practical problem facing the plaintiff.  Specifically, the plaintiff can obtain declaratory relief only to stop the defendants from continuing to violate federal law.  In ruling for the individual defendants, however, the Court did not base its ruling on a conclusion that the defendants were not put on notice that their conduct violated the First Amendment or the Due Process Clause. Instead, the Court went right to the merits and ruled that there was no violation of either of these constitutional provisions. Clearly, if there was no past infraction, there can be no future misconduct to correct via prospective relief.[8]

_____

[8]  Finally, even if the Court had concluded that the defendants had violated plaintiff's rights under either the First Amendment or Due Process Clause, the *Young* principle is available only for ongoing violations, not for cases in which federal law was violated in the past. *Summit Med. Assoc., P.C.*, 180 F.3d at 1337.  Whether plaintiff could prevail in an argument that prospective relief is

B. __Impact Of *Lapides* On This Case__

As there is no need for the plaintiff to insist that the BOR be named in any declaratory or injunctive order, perhaps plaintiff is actually disputing the Court's earlier ruling that the BOR cannot be required to pay monetary damages in this case.   To be sure, plaintiff has not sought reconsideration of this ruling or expressed disagreement.   Nonetheless, as the briefing has focused on the Supreme Court's decision in *Lapides*, the Court will discuss that case in connection with its earlier ruling preempting the BOR from any damages award.

In *Lapides*, the plaintiff had filed suit in state court against the Georgia Board of Regents, raising a federal due process claim under § 1983 and state law claims under the Georgia Tort Claims Act. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 251 F.3d 1372, 1373 (11th Cir. 2001).   The defendant removed the case to federal court based on federal question jurisdiction arising out of the §1983 claim; at the same time, defendant filed a Rule 12(b)(6) motion to dismiss based on, among other reasons, the defendant's Eleventh Amendment immunity from suit.   *Id.*   The district court ruled that, by removing the case, the defendant had waived its

---

available on these facts is an issue that the Court will not need to address if, in fact, there has been no past wrongdoing to correct.

Eleventh Amendment immunity;[9] the Eleventh Circuit disagreed and reversed. *Id.*

The Supreme Court granted certiorari and held that the federal claim should be dismissed, but concluded that the State had waived any Eleventh Amendment immunity on the state-law claims when it removed the case to federal court. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002). Before reaching the question of waiver of Eleventh Amendment immunity by the State, the Supreme Court first disposed of the federal § 1983 claim on the merits. Specifically, the Court noted that there was no valid federal claim against the State, because the plaintiff had sought only money damages and, consistent with the holding in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989), "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides*, 535 U.S. at 617.

Moving to consideration of the waiver issue, the Court noted that, given its dismissal of the federal claim, its answer on the waiver question was "limit[ed]...to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* The Supreme Court's answer to that

---

[9]   The district court's ruling was not published and it is too old to be on Pacer. The Court draws its inferences as to that ruling based on the Eleventh Circuit's and Supreme Court's discussions.

"limited" question was a direct one: when a State has waived its own immunity in state court as to certain state-law claims, it cannot undo that waiver merely by removing to federal court and seeking to use the Eleventh Amendment[10] to do its work for it.  In other words, but for its decision to remove the case to federal court, which removal was only made possible by the fortuitous inclusion of a federal claim in a complaint also containing a state-law claim, the State would have been forced to litigate the state-law claim in state court on the merits; there was no state immunity for this claim.  The Supreme Court concluded that it would be quite unfair for the State, which had chosen to remove the case to federal court based on the federal claim, to then be able to escape its duty to litigate the state-law claim by then arguing that, pursuant to the Eleventh Amendment, the judicial power of the United States could not be leveled against it.  *Id.* at 619.

Although the Supreme Court's original limitation of its holding to the facts before it seems quite straightforward, the Court arguably expanded the reach of its holding in further discussion of the issue, with language that has suggested to some that the Court's

_____

        [10]   While many exceptions have arisen over time, the Eleventh Amendment essentially prohibits law suits against a State in federal court.  The Amendment provides that the "'Judicial power of the United States shall not be construed to extend to any suit...commenced or prosecuted against one of the...States.'" *Lapides*, 535 U.S. at 618.

26

holding concerning the State's waiver of immunity might apply in any situation in which the State has removed the action.  *See, id.* at 620-23.  That arguable ambiguity in the opinion has given rise to much debate in federal jurisprudence concerning the extent to which *Lapides* creates a waiver of all immunity for federal law claims.

There appears to be no disagreement that, by voluntarily removing a case, and thereby invoking a federal forum, the State has lost its right under the Eleventh Amendment to complain about being in federal court.  Nonetheless, some federal courts have indicated that the loss of Eleventh Amendment immunity, through removal, does not necessarily mean that the State loses its right to contest liability based on the State's own inherent sovereign immunity for the particular claim.  Stated another way, a State that removes an action to federal court will waive its "immunity from suit" in federal court, but not necessarily its "immunity from liability." *See e.g., Lombardo v. Pa., Dep't of Pub. Welfare,* 540 F.3d 190, 198-200 (3rd Cir. 2008); *Myers ex rel. Benzing v. Texas*, 410 F.3d 236, 254-256; *Stewart v. North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005).

The Eleventh Circuit has not yet made a pronouncement on this question.  At least three district courts in the Circuit, however, have arrived at a rationale that, consistent with *Lapides*, refuses to allow a State defendant who has removed a case to federal court

27

to game the system, by then asserting Eleventh Amendment immunity to object to being in federal court.  On the other hand, these courts have recognized that Eleventh Amendment immunity is not the only kind of immunity available to a state.  Accordingly, when a state defendant  properly removes an action to federal court, it does not lose the right it always would have had, in whatever court it might have been sued, to assert a sovereign immunity defense that potentially shields it from liability.  *See Clemmer v. State of Fla.*, 2005 WL 2656608 (N.D. Fla. Oct. 17, 2005)(Hinkle, J.); *GeorgiaCarry.Org, Inc. v. Georgia*, 2011 WL 240108 (M.D. Ga. Jan. 24, 2011)(Royal, J.) and *Stallworth v. Ala. Dep't of Mental Health & Mental Retardation,* 2011 WL 3503177 (M.D. Ala. Aug. 10, 2011)(Fuller, J.).

In *Clemmer,* the plaintiff had sued in state court, raising a federal law claim under the Age Discrimination Act ("ADEA") and a state-law claim.  The State of Florida removed the case to federal court.  Because Supreme Court precedent has held that Congress could not abrogate a state's immunity through its passage of the ADEA, the State sought to have that claim dismissed.  Relying on *Lapides*, however, the plaintiff argued that the State had waived its immunity by removing the case to federal court.

Judge Hinkle disagreed.  He noted that the Supreme Court in *Lapides* had explicitly declined to address the issue before him:

28

whether removal waives a state's immunity from federal claims for which the State would otherwise enjoy immunity in state court. Recognizing the right of the State to remove any case in which there is a legitimate federal question, as there clearly was with the ADEA claim, Judge Hinkle held that "removal waives any objection to litigation in federal [court] rather than state court but does *not* waive immunity that would foreclose a claim in *any* court, state or federal." *Clemmer,* 2005 WL 2656608 at *1 (emphasis in original).

> This is so because a state that removes an action affirmatively chooses federal rather than state court as the forum in which the litigation will go forward, but choosing federal rather than state court says nothing about a state's willingness to have the action go forward at all.  Defendant thus has not waived its immunity from plaintiff's ADEA claim.

*Id*. As a result, the court dismissed the federal ADEA claim, based on immunity grounds, and remanded the state claim to the state court.

The Court agrees with the reasoning of the above district court decisions.  The BOR, which stands in for the State of Georgia, did not lose its ability to rely on a defense of sovereign immunity to contest its liability for a federal claim brought against it.  The Court, however, does not have to decide whether Georgia's potential sovereign immunity would shield it from liability in this case, because it is well-settled that, regardless of immunity, no state can be liable for money damages in a claim brought against it under

29

§1983.  Indeed, the Supreme Court in *Lapides* began its opinion by announcing that the § 1983 claim filed against Georgia in that case could not stand because, for purposes of money damages, a § 1983 claim applies only to a "person," and a state  can never be considered a person. *Lapides*, 535 U.S. at 617.

Consistent with the Supreme Court's pronouncement, this Court maintains its original ruling that the BOR cannot be sued for money damages under § 1983.  As the BOR has only been sued under § 1983, the Court dismisses all claims against it.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion for Partial Summary Judgment [58] and **DENIES as moot** plaintiff's Motion for a Status Conference [72].

All claims have been dismissed against the BOR.  The Court has granted qualified immunity as to all individual defendants, but given defendants' suggestion that there might be some need to file a further summary judgment motion as to these defendants, the Court will not dismiss them yet.  The individual defendants sued in their official capacities remain in the case for purposes of potential prospective relief, only.

As noted above, the Court is uncertain that the plaintiff can prevail on any claim, based on the Court's ruling today.  There appear to be no claims remaining against the individual defendants

and, as the Court has concluded that plaintiff has failed to demonstrate any violation of its constitutional rights, there would appear to be no justification for ordering prospective relief.

Accordingly, the plaintiff is directed to confer with the defendants and provide the Court with a joint statement setting out the parties' position on the issues remaining to be resolved. Should there be viable claims remaining to be litigated, the parties should present a proposed scheduling order. This joint status report/scheduling order shall be provided by **October 28, 2011.**

SO ORDERED, this <u>30th</u> day of September, 2011.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

31